## UNITED STATES of America and Interstate Commerce Commission, Plaintiffs-Appellees,

v.

## SOUTHERN PACIFIC TRANSPORTA-TION CO., Defendant-Appellant.

### No. 81–4331.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1982.

Decided Oct. 29, 1982.

Ann Fingarette Hasse, San Francisco, Cal., argued, for defendant-appellant; J. Thomas Tidd, Washington, D. C., on brief.

Mitchell Haller, ICC, San Francisco, Cal., argued, for plaintiffs-appellees; George C. Stoll, Asst. U. S. Atty., San Francisco, Cal., on brief.

Before BROWNING and PREGERSON, Circuit Judges, and SOLOMON,* Senior District Judge.

SOLOMON, Senior District Judge:

Southern Pacific Transportation Co. (Southern Pacific) appeals from a preliminary injunction requiring it to grant the Interstate Commerce Commission (ICC) access to its Clerical Officers Station Check List (Check List) for its San Jose office. The Check List is a document compiled

---

\* The Honorable Gus J. Solomon, Senior District Judge for the District of Oregon, sitting by designation.

from railroad records containing information required by the ICC under section 11144 of the Interstate Commerce Act (Act).[1]

The district court found that the Check List is related to records which Southern Pacific is required to keep, that the Check List would help explain those records and that the ICC, therefore, is entitled to the Check List. Southern Pacific contends that the ICC's right of inspection is limited under the Act to specific records, and that the Check List is not one of those records. It asserts that the Check List is an internal management report used to evaluate compliance by personnel with both ICC and Southern Pacific procedures and to avoid violations of the Act which could result in substantial penalties.

In April, 1981, the ICC asked Southern Pacific for its San Jose Check List, but Southern Pacific refused. The district court ordered Southern Pacific to give the Check List to the ICC or be held in contempt. When this court refused to stay the contempt order, Southern Pacific delivered the Check List to the ICC. It now seeks review of the preliminary injunction.[2] We affirm.

The controlling statutory provision is 49 U.S.C. § 11144(b)(2), which reads as follows:

(b) The Commission, or an employee designated by the Commission, may on demand and display of proper credentials—

\* \* \* \* \* \*

(2) inspect and copy any record of—
(A) a carrier, broker, lessor, or association;

(B) a person controlling, controlled by, or under common control with a carrier if the Commission considers inspection relevant to that person's relation to, or transaction with, that carrier. . . .

This section is a recodification of the ICC's inspection powers, formerly set out in section 20(5) of the Act. In 1887, when first enacted, section 20 only authorized the ICC to require annual reports from all carriers subject to its jurisdiction, and to prescribe uniform methods of keeping carriers' accounts.[3]

In 1906, the Act was amended to broaden the ICC's powers, to give "the Commission power, in its discretion, to prescribe the form of accounts, records, and memoranda to be kept by the carriers, and that the Commission shall at all times have access to such records and books and other accounts to be kept."[4]

In *U. S. v. Louisville and Nashville R.R. Co.,* 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915), the Court denied the ICC the right of compulsory inspection of the railroad's correspondence. As a result of the Court's strict construction of section 20(5), Congress enacted the 1920 amendment to the Act which permitted access to correspondence.[5]

The ICC contends that each amendment to section 20(5) expanded its access to carriers' documents. There are no words of limitation in the current section 11144(b)(2). Nevertheless, the courts have limited the ICC's inspection power by reading "reasonableness" into the statute.

In *ICC v. Gould,* 629 F.2d 847 (3d Cir. 1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct.

1. 49 U.S.C. §§ 1–2014, 10101–11916 (1976 & Supp. III 1979).

2. Although Southern Pacific turned over the San Jose Check List to the ICC before this action was appealed, this case is not moot. The preliminary injunction pertained only to the San Jose Check List. The ICC may request other Check Lists from this or other carriers. The issue presented here, therefore, falls within the exception in *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), wherein it was stated that cases which are "capable of repetition, yet evading review,"

*id.* at 515, 31 S.Ct. at 283, present a live controversy and are not moot.

3. Interstate Commerce Act, ch. 104, § 20, 24 Stat. 379, 386 (1887).

4. H.R.Rep. No. 591, 59th Cong., 1st Sess. 5–6, (1906) (statement of the purpose of section 20(5)).

5. Transportation Act, ch. 91, § 435, 41 Stat. 456, 493 (1920).

856, 66 L.Ed.2d 800 (1981), the ICC sought to inspect the transportation-related records of a broker of transportation services to ascertain his compliance with the Act. When defendant Gould refused to permit the inspection, the ICC obtained an injunction. The court held:

> [I]n order to obtain an injunction under section 11702(a)(4) to enforce a section 11144(b) inspection request, the ICC in addition to meeting the procedural requirements of section 11144(b), must also satisfy the tests of *Powell, [United States v.] LaSalle [National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221], and [*United States v.*] *Garden State [National Bank,* 607 F.2d 61].

629 F.2d at 855–56.

The reasonableness test applied in *Gould* is derived from the context of Internal Revenue Service summonses, and is articulated in *U. S. v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). It requires the Commissioner to

> show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed.

379 U.S. at 57–58, 85 S.Ct. at 254–255. The government has the burden to prove its compliance with the four prongs of this test.

In *Midwest Growers Co-Op. Corp. v. Kirkemo,* 533 F.2d 455 (9th Cir. 1976), this court found that the ICC "is limited by the same standards of reasonableness applicable to other administrative agencies." 533 F.2d at 461.

We believe the ICC request for documents complies with the *Powell* test.

The ICC requested the Check List to monitor Southern Pacific's compliance with prescribed rates and tariffs, a valid investigative purpose. The ICC did not have the information, and it was relevant.

The district court found that the request was made in good faith under the provision of section 11144(b)(2) and that the request complied with the reasonableness test. There was ample evidence to support both findings.

AFFIRMED.